FILED
IN OPEN COURT

FEB 2 6 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Criminal No. 1:08CR385 |
| v. | ) | |
| | ) | |
| PAULA GIPSON, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

Were the United States to proceed to trial in this case, it would provide testimonial, documentary and real evidence to prove beyond a reasonable doubt that, from no later than September 2007 through August 1, 2008, in the Eastern District of Virginia and elsewhere, defendant PAULA GIPSON (the "Defendant") did unlawfully, willfully and knowingly agree, combine and conspire with others to execute and attempt to execute a scheme or artifice (i) to defraud a financial institution and (ii) to obtain moneys, funds and credit owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses and representations in violation of Title 18, United States Code, Section 1349 (Conspiracy to Commit Bank Fraud). Specifically, the evidence would establish, at a minimum, the following facts:

In approximately September 2007, Defendant joined an ongoing conspiracy to defraud financial institutions of substantial sums of money by fraudulently assuming the identities of account holders on existing home equity line of credit loans (HELOC), and causing financial institutions to transfer funds from those HELOC accounts to overseas bank accounts controlled by co-conspirators.

Defendant and/or other co-conspirators carried out their fraudulent scheme by first identifying individuals who held large HELOC accounts, typically greater than $200,000. To identify victims, Defendant and/or her co-conspirators obtained lists of first and second mortgage borrowers from direct marketing companies that sold lists of sales leads for mortgage products. Defendant and/or other co-conspirators obtained personal identifying information, including social security numbers, password clue information, and signature exemplars for victims from a variety of online sources. Defendant and her co-conspirators also fraudulently obtained unauthorized access to potential victims' credit reports on publicly available credit report ordering websites to obtain information about potential victims' bank and HELOC accounts.

Once members of the conspiracy identified a target HELOC account and account holder and completed gathering personal identifying information about the target, certain members of the conspiracy called customer service contacts at target financial institutions and impersonated the HELOC account holders. Defendant was tasked by TOBECHI ONWUHARA, the person she believed to be the leader of the conspiracy, with making fraudulent calls when the targeted HELOC account holder was a woman. To create the false appearance that the call originated from the HELOC account holders, Defendant and her co-conspirators would use a caller id spoofing service to cause a false phone number to appear in the call recipient's caller identification display.

After providing the correct account information for a HELOC account holder, the fraudulent caller would first verify the unused balance on a HELOC account if the caller did not already know that information. Next, the caller would transfer funds out of the HELOC account and into a checking or savings account. Then, the caller would request a wire transfer of the funds to a foreign bank account controlled by members of the conspiracy. When a financial institution required written

confirmations of wire transfer requests, Defendant and her co-conspirators would request that the financial institution email or fax the wire transfer form to a free, web-based email account established by one or more members of the conspiracy. Members of the conspiracy subscribed to a fax-to-web service that converted incoming faxes to a free web-based email account. The co-conspirator would then complete the wire transfer form and forge the HELOC account holder's signature based on exemplars obtained from loan documents and publicly-available, property-record databases. Additionally, the fraudulent caller would call the account holder's phone company and have the victim's home phone number forwarded to a pre-paid cell phone in the possession of one of the co-conspirators for a period of several hours in order to receive confirmation phone calls from the financial institution.

Co-conspirators would direct the wire transfers to be directed to overseas bank accounts controlled by other members of the conspiracy. These overseas co-conspirators would keep a percentage of the fraudulently obtained proceeds and then cause the remainder of the proceeds to be transferred to accounts in Nigeria or the United States controlled by the U.S.-based members of the conspiracy. Portions of the illegally obtained proceeds would be shared among the persons who performed some role in scheme.

As part of this fraudulent scheme, on or about December 7, 2007, ONWUHARA, impersonating the holder of a HELOC account with the United States Senate Federal Credit Union ("USSFCU"), called USSFCU's customer support in the Eastern District of Virginia, provided the account holder's personal account information, and fraudulently caused USSFCU to execute a wire transfer in the amount of $280,000 dollars from Victim 1's account to a co-conspirator's bank

account in Korea. The victim account holder resides in Alexandria, Virginia, which is in the Eastern District of Virginia.

In furtherance of this scheme, on or about September 7, 2007, the Defendant, using a caller ID spoofing service, called BECU, a victim financial institution, successfully impersonated a HELOC account holder, and fraudulently caused the transfer of $200,000 from the account holder's HELOC account and into the account holder's savings account. The Defendant then initiated two fraudulent wire transfers to accounts controlled by co-conspirators: one transfer in the amount of $97,457.15 and a second transfer in the amount of $89,957.22.

Defendant received payments from ONWUHARA of approximately $18,000 for her role in the conspiracy.

                Respectfully submitted,

                Dana J. Boente
                Acting United States Attorney

By: _____
                John Eisinger
                Assistant United States Attorney

                Tyler G. Newby
                Special Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the Defendant, PAULA GIPSON and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
PAULA GIPSON
Defendant

I am PAULA GIPSON's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Michael J. Todd
Attorney for PAULA GIPSON

Date: 2-11-09