IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO.: 1:08CR385-004 |
| v. | ) | |
| | ) | Sentencing: September 4, 2009 |
| PAULA GIPSON, | ) | The Honorable T.S. Ellis, III |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO THE
SENTENCING AND MOTION FOR DOWNWARD DEPARTURE**

The United States of America, through its attorneys, Dana J. Boente, United States

Attorney, John Eisinger, Assistant United States Attorney, and Tyler Newby, Special Assistant

United States Attorney, in accord with 18 U.S.C. § 3553(a) and the United States Sentencing

Commission, *Guidelines Manual* (Nov. 2008), files this position on the sentencing of the

defendant Paula Gipson.  In addition, for the reasons set forth in its supporting memorandum,

filed separately, the United States hereby moves this court for a downward departure in the

amount of 50%, pursuant to § 5k.1.1 of the Guidelines.  If granted, the defendant's Guidelines

range would be twenty-five to thirty-one months of incarceration.


I.      **OFFENSE OF CONVICTION**

On February 26, 2009, the defendant pleaded guilty to a single-count criminal

Information charging her with conspiracy to commit bank fraud, in violation of Title 18, United

States Code, section 1349.  The maximum penalty for this offense is a term of imprisonment of

thirty years, a fine of $26,000,000 (twice the pecuniary loss), full restitution, a $100 special

assessment, and five years of supervised release.

As set forth in the Presentence Report (PSR) and the Statement of Facts, the defendant was a participant in a conspiracy that had the object of impersonating home equity line of credit (HELOC) account holders and wiring substantial funds from HELOC accounts to co-conspirators' bank accounts domestically and abroad.  Other co-conspirators would obtain personal identifying information about HELOC account holders.  They would then call the account holder's financial institution and assume the account holder's identity.  If the co-conspirators were successful in impersonating the account holder, they would wire funds out of the victim's HELOC account and into overseas accounts controlled by money mules.  The money mules would take a percentage of the fraudulently-obtained funds and wire the remainder back into the U.S.-based co-conspirators' domestic bank accounts or to accounts in Nigeria.  Total attempted losses are in excess of $38 Million, with confirmed losses in excess of $13 Million.

Defendant was introduced to the conspiracy by its leader, Tobechi Onwuhara, in approximately September of 2007.  At that time, the defendant was dating Onwuhara's cousin.  At the direction of Onwuhara, Defendant would use paid databases to gather personally identifying information about homeowners who held HELOCs that members of the conspiracy would use to impersonate those account holders.  On at least two occasions, Defendant placed calls to financial institutions to impersonate female account holders.  She would then ask for the financial institutions to fax wire transfer forms to an e-fax number used by Onwuhara.  As set forth in the Statement of Facts and the Pre-Sentence Investigation Report (PSR), one of those instances resulted in the fraudulent transfer of approximately $187,414 from a victim account

holder's account into accounts controlled by co-conspirators. Defendant received approximately $20,000 from Onwuhara for her participation in the conspiracy.

## II.     GUIDELINES CALCULATION

The PSR correctly calculates the Defendant's total offense level under the Guidelines as 20. This calculation includes a base offense level of seven, as provided by § 2B1.1(a) of the Guidelines and an additional twelve levels for a stipulated loss amount of $200,000 to $400,000, as provided by § 2B1.1 of the Guidelines. The PSR also correctly includes a two level enhancement for more than ten victims under § 2B1.1(b)(2)(A). While the defendant did not stipulate to this enhancement, there can be no doubt that the Defendant was aware from the hundreds of credit reports she reviewed that the scheme involved more than ten victims. Similarly, while the Defendant did not stipulate that a substantial portion of the scheme involved overseas activity or that the scheme involves sophisticated means, her testimony in both the grand jury and at trial revealed her knowledge as to these facts. For example, she testified that Onwuhara told her that the funds that she helped transfer fraudulently from victim accounts would be sent to accounts overseas. Similarly, the Defendant testified that the scheme involved caller ID spoofing to trick financial institutions into believing that fraudulent calls placed by co-conspirators were actually being made from phone numbers associated with the true account holders. Accordingly, the PSR correctly added a two level enhancement under 2B1.1(b)(9)(B) or (C). Finally, a three level reduction is appropriate in light of the Defendant's early and full acceptance of responsibility. Defendant's criminal history category is properly calculated at IV because Defendant has a total of 9 criminal history points.

### III.    LEGAL STANDARD

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, 125 S. Ct. 738 (2005), "a sentencing court is still required to `consult [the] Guidelines and take them into account when sentencing.`" *United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006) (quoting *Booker*, 125 S. Ct. at 766).  The Supreme Court recently reaffirmed that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 128 S. Ct. 586, 596 (2007).  The Fourth Circuit has held that, "[c]onsistent with . . . *Booker*, a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the Sentencing Guidelines. Then the court shall consider that range as well as relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Clark*, 434 F.3d at 685-86 (emphasis in original) (quoting *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005)); *accord United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006).  Ultimately, the sentence imposed must meet a standard of reasonableness, *see Booker*, 125 S. Ct. at 765, and as the Fourth Circuit has recently stated, "reasonableness is not measured simply by whether the sentence falls within the statutory range, but by whether the sentence was guided by the Sentencing Guidelines and by the provisions of § 3553(a)." *Green*, 436 F.3d at 456.

In regards to this specific case, the Government believes that a sentence at the low end of a range of 26 to 32 months of incarceration would satisfy the relevant factors set forth in § 3553(a).  The Defendant's participation in the scheme was over a shorter period of time and was less substantial than that of other members of the conspiracy who received larger sentences, namely, Abel Nnabue, Daniel Orjinta and Precious Matthews.  Furthermore, as set forth in the

4

Government's separate memorandum, the Defendant provided substantial cooperation during the course of the Government's investigation, testifying truthfully both before the grand jury and during the jury trial of Henry Obilo.  In addition, the Defendant has provided some assistance in the investigations of unrelated crimes in other judicial districts.

Nevertheless, the government cannot ignore the Defendant's lengthy and serious criminal history, which includes a prior federal conviction involving fraud.  Unfortunately, the arc of the Defendant's criminal history does not bend toward rehabilitation but toward increasingly serious felonies.  And while the Defendant's participation in this scheme was not as substantial as that of some of the other co-conspirators, she did personally assist in fraudulently obtaining nearly $200,000 from a victim account. Accordingly, a period of incarceration of 25 months would appropriately take into account both the seriousness of this crime, the Defendant's criminal history, the avoidance of sentencing disparities and the Defendant's cooperation.

## IV.    RECOMMENDATION

For the reasons set forth above and in the government's separate memorandum, the government moves, pursuant to Section 5k1.1 of the Sentencing Guidelines, for a 50% reduction of the Defendant's sentence.  If the court were to apply this reduction to the 51-63 month guidelines range properly calculated by the PSR, the Defendant's adjusted advisory guidelines range would be approximately 25-31 months of incarceration.  Accordingly, the government

recommends a sentence of 25 months of incarceration, to be followed by a five year period of

supervised release.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:      /s/ John Eisinger
         John Eisinger

         /s/ Tyler Newby
         Tyler Newby
         Attorneys for the United States
         U.S. Attorney's Office
         Justin W. Williams U.S. Attorney's Building
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         703-299-3700 [Phone]
         703-299-3981 [Fax]

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of August, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Michael Todd
Attorney for the Defendant
350 N. Saint Paul St.
Suite 1600
Dallas, TX 75201
(214) 630-8633 [Phone]
todd@toddlaw.org

By:     /s/ John Eisinger_____
John Eisinger
Virginia Bar No. 65428
Attorney for the United States
U.S. Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700 [Phone]
703-299-3981 [Fax]
ausa@eisinger.net